UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON GERARD SUZADAIL,　　　　　　:
　　　　　　　　　　　　　　　　　　:CIVIL ACTION NO. 3:18-CV-0535
　　　　　　Plaintiff,　　　　　　　:
　　　　　　　　　　　　　　　　　　:(JUDGE CONABOY)
　　　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
NANCY A. BERRYHILL,　　　　　　　　:
Acting Commissioner of　　　　　　:
Social Security,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　Defendant.　　　　　　　:
　　　　　　　　　　　　　　　　　　:

---

**MEMORANDUM**

　　　Pending before the Court is Plaintiff's appeal from the Acting
Commissioner's denial of Disability Insurance Benefits ("DIB")
under Title II of the Social Security Act ("Act").　(Doc. 1.)
Plaintiff protectively filed his application on July 3, 2014,
alleging disability beginning on October 4, 2013.　(R. 12.)　After
Plaintiff appealed the initial November 20, 2014, denial of the
claim, a hearing was held by Administrative Law Judge ("ALJ")
Jarrod Tranguch on November 21, 2016.　(*Id.*)　ALJ Tranguch issued
his Decision on April 27, 2017, concluding that Plaintiff had not
been under a disability as defined in the Social Security Act
("Act") from October 4, 2013, through the date of the decision.
(R. 23.)　Plaintiff requested review of the ALJ's decision which
the Appeals Council denied on January 16, 2018.　(R. 1-5.)　In
doing so, the ALJ's decision became the decision of the Acting
Commissioner.　(R. 1.)

　　　Plaintiff filed this action on March 7, 2018.　(Doc. 1.)　He

asserts in his supporting brief that the Acting Commissioner's determination should be remanded for two main reasons: 1) the ALJ's residual functional capacity ("RFC") assessment is unreviewable because the ALJ did not identify any specific longitudinal objective signs or findings that are inconsistent with Dr. Dobash's opinion; and 2) the RFC assessment is not supported by substantial evidence because the ALJ did not reject or explain his failure to reject relevant portions of an opinion to which he assigned significant weight and which he found supported by the record. (Doc. 9 at 9.) For the reasons discussed below, the Court concludes Plaintiff's appeal is properly granted.

## I. Background

Plaintiff was born on November 1, 1971, and was forty-one years old on the alleged disability onset date. (R. 22.) Plaintiff has a high school education and past relevant work as a delivery driver, warehouse associate, and a road crew/construction worker. (*Id.*) In the August 28, 2014, Disability Report, Plaintiff alleged that his ability to work was limited by right arm problems, C2 fracture with screws, and arthritis. (R. 177.)

## A. *Medical Evidence*

The Court will provide a summary of medical evidence to provide context for discussion. Additional specific evidence relevant to claimed errors will be considered in the discussion of arguments raised.

Plaintiff was in a single car accident in July 2010 which caused injuries including broken ribs, fractured humerus, and injuries to the cervical spine requiring surgery. (*See*, *e.g.*, R. 370.) Following the accident he had chronic neck and shoulder pain for which he treated with several providers including his primary care physician, Dr. Gregory Dobash, orthopedic specialist Dr. Patrick Brogle, pain management specialist Dr. Yasin Khan, and physical medicine/rehabilitation specialist Dr. Amar Abassi. (R. 249, 370, 517.)

In Correspondence to "Trauma Doctors" dated June 11, 2013, Patrick J. Brogle, M.D., of St. Luke's Orthopaedic Specialists, stated that Plaintiff "presents 17 months following ORIF of a nonunited proximal humerus fracture," Plaintiff reported he was plagued by persistence of shoulder pain despite attempts to ameliorate it with physical therapy and injections, and he was being treated for neck problems which were also posttraumatic in nature. (R. 307.) Dr. Brogle's physical exam cofirmed the shoulder pain and revealed decreased flexion and abduction. (*Id.*) Dr. Brogle noted that the findings were consistent with previous x-rays and stated "I am quite clear that I do not think this is ever going to improve significantly." (R. 307.) He also noted "I think Jason can be considered permanently disabled with regard to use of his right shoulder from this injury." (*Id.*)

On September 13, 2013 (approximately one month before the

alleged onset date of October 4, 2013), Plaintiff reported to Dr. Brogle that he was frustrated with the range of motion deficit of his right shoulder but he denied pain or soreness in the shoulder at the time. (R. 302.) Dr. Brogle recorded that Plaintiff had been unable to return to his old job. (*Id.*) Physical exam showed limited rotation of the right shoulder, 5/5 muscle strength, and 5/5 flexion and extension. (R. 303.)

Beginning in May 2013, Yasin Kahn, M.D., of Comprehensive Pain Centers administered facet injections and performed cervical rhizotomies which resulted in pain relief for varied periods of time including a four-month period from November 11, 2013, to April 25, 2014. (*See*, *e.g.*, 350, 353, 355, 360.) Plaintiff received further treatment from Dr. Kahn in the following months. (R. 341-49.) He last saw Dr. Kahn on July 25, 2014, when he had a cervical rhizotomy. (R. 342.) Post-procedure notes indicate marijuana was found on the drug screen and no Percocet was found, Plaintiff only occasionally took Percocet with sixty pills lasting two to three months, and Plaintiff was warned about marijuana. (*Id.*) Plaintiff was to follow up in four weeks. (*Id.*)

Plaintiff continued to treat with Dr. Dobash for a variety of problems including asthma and right cupital tunnel syndrome on September 26, 2014. (R. 373.) Dr. Dobash's physical examination at that time was normal except for limited range of motion of the right shoulder. (R. 376.)

In January 2015, Plaintiff again was treated at St. Luke's Orthopaedics for right shoulder problems. (R. 449.) Notes signed by Dr. Brogle and David Renner, PAC, indicate Plaintiff had not been seen for some time and his chief complaint was right shoulder pain. (R. 449.) Physical exam showed the following: no restriction of elbow motion on the right; he was able to perform forward flexion; abduction of the arm was done to 70 degrees; he was tolerant of internal rotation to 45 degrees; he had limited external rotation; and he had palpable pain over the right a.c. joint and the glenohumeral joint. (R. 449-50.) Plaintiff received an injection in his shoulder. (R. 450.) The visit summary stated that Plaintiff would be seen going forward on an as-needed basis and may require occasional treatment of the right shoulder joint. (R. 449.)

On Dr. Dobash's referral, Plaintiff began treating with Ammar Abbasi, M.D., of the Lehigh Valley Physician Group in August 2015 with the chief complaint of neck pain which radiated into the back of his head and down into his upper back. (R. 517.) Examination of the neck showed decreased range of motion, tenderness, and spasm. (R. 521.)

In September 2015, Plaintiff was treated at St. Lukes' Hospital Emergency Department for neck pain which was diagnosed as muscle spasm of the cervical muscle of the neck. (R. 485.) He reported the pain as 9/10 and said it was a chronic problem that

had become acutely worse the night before. (R. 487.) Plaintiff said he was "in between pain management physicians" because the shots he had received in the past from Dr. Kahn had become less effective. (*Id.*)

At Plaintiff's December 15, 2015, visit, with Dr. Abbasi, he reported cervical spasm had improved and Plaintiff was using Oxycodone less often. (R. 533.) Plaintiff said he was using the TENS unit for twenty to thirty minutes a day which was helping. (*Id.*) Plaintiff deferred having a trigger point injection. (*Id.*) He continued to report improvement in April 2016 (R. 540) but noted increased spasm in August 2016 and Dr. Abbasi adjusted his medication regimen (R. 546).

**B.    *Relevant Opinion Evidence***

**1.    <u>Treating Orthopaedist</u>**

As noted above, on June 11, 2013, Dr. Brogle opined "Jason can be considered permanently disabled with regard to use of his right shoulder from this injury." (R. 307.)

**2.    <u>Primary Care Provider</u>**

On June 26, 2014, Dr. Dobash stated in the "Discussion/Summary" section of his office visit notes "[patient unable to return to gainful employment as a result of right humeral fracture with nonunion. He understands that for the purpose of Social Security disability application we request a FCE which he has had and will get a copy to our office." (R. 378.)

On July 1, 2015, Dr. Dobash completed a Physical Residual Functional Capacity Questionnaire. (R. 471-74.) Dr. Dobash noted that he had started to see Plaintiff in 2011 and saw him every one to three months. (R. 471.) He identified diagnoses which included involvement of the right shoulder and cervical spine, noting that Plaintiff's prognosis was stable. (*Id.*) Identified symptoms were shooting pain from the cervical spine into the head, right shoulder, and right side of the cervical spine; chronic right shoulder pain with reduced range of motion; and decreased right upper extremity strength. (*Id.*) Dr. Dobash characterized the pain as neuropathic, constant, moderate to severe with aching and shooting pain which was exacerbated by weather changes and activity. (*Id.*) Identified signs and objective findings included the following: right hand grip weakness; "palmer pinch capacity 8 lbs. left hand grip 9 lbs."; decreased strength and limitation with shoulder range of motion contributing to a deficit with lifting and carrying; the C2 fusion and laminectomy limited flexion, extension, and rotation of the cervical spine; and "RAOL scale 19%." (*Id.*) Dr. Dobash noted that some medications caused drowsiness. (*Id.*) He opined that Plaintiff was not a malingerer. (*Id.*) He also opined that Plaintiff would be able to sit for thirty minutes and stand for twenty minutes at a time and he would be able to do these activities for a total of two hours each in an eight-hour workday. (R. 472-73.) Dr. Dobash further found that Plaintiff would need to

shift positions and take unscheduled breaks every twenty-five
minutes for fifteen to thirty minutes. (R. 473.) He determined
Plaintiff could occasionally lift less than ten pounds and never
lift more than that; he could never look down or look up, could
rarely turn his head, and occasionally hold his head in a static
position; and he could never twist, stoop, crouch, climb ladders,
or climb stairs. (*Id.*) Dr. Dobash determined Plaintiff had
significant limitations regarding reaching, handling, or fingering:
he could grasp/turn/twist objects with his hands 50% of the time
with his right and 70% of the time with his left; he could perform
fine manipulation with his fingers 40% of the time with his right
hand and 46% of the time with his left; and he could not reach with
his arms. (R. 474.) Dr. Dobash believed Plaintiff would miss work
more than four days a month due to his impairments. (*Id.*)
Regarding additional limitations, Dr. Dobash referred to the
Functional Capacity Evaluation, and noted that Plaintiff's "work
and ADL interference indicate inability to engage in gainful
employment and disability." (*Id.*)

## 3. **Functional Capacity Evaluation**

On June 18, 2015, Melissa Leaser, DPT, of St. Lukes University
Health Network conducted a Quantified Functional Capacity
Evaluation. (R. 504-09.) Dr. Leaser found that Plaintiff's
maximum lifting capacity was ten pounds and his maximum carrying
capacity was ten pounds which fit into the Dictionary of

Occupational Titles light strength category which was defined as having the ability to lift ten to twenty pounds and carry five to ten pounds. (R. 507.) Dr. Leaser opined that Plaintiff was capable of light exertional work with the following job restrictions: no standing for more than twenty-five minutes; no walking for more than .3 miles continuously; no pushing or pulling more than ten pounds; no balancing activities that require crouching; no crouching, stooping, kneeling or crawling; no tip-pinching; and no Palmer-pinching with the right hand. (*Id.*)

## C.  ALJ Hearing

Having previously been awarded a closed period of disability from July 3, 2010, through May 1, 2012, in a Decision rendered by ALJ Edward L. Brady (*see* R. 103-111), ALJ Tranguch asked Plaintiff at the November 21, 2016, hearing why he had chosen the October 4, 2013, alleged onset date for his current application. (R. 44.) Plaintiff replied that the closed period had been based on an assessment of temporary disability with the possibility of recovery and his decision to reapply with the new onset date was based on Dr. Brogle's assessment that Plaintiff was never going to get better. (R. 44-45.)

Focusing on the period from October 2013 to the time of the hearing, Plaintiff said the range of motion in his neck had gotten worse, some days it was hard to move his arm and pick things up, he could only pick up small things with his right hand, he could not

reach across or above head level with his right arm and reaching
that high would bother him. (R. 45-46, 49, 57, 59.)  Plaintiff also
said standing and walking bothered his neck.  (R. 58.)  Plaintiff
testified that he turned his whole body because he could not turn
his head.  (R. 60-61.)  When asked about his left side, Plaintiff
responded that he did not have limitations related to lifting and
carrying with the left but lifting on that side would bother his
neck.  (R. 57, 65.)  Regarding numbness and tingling in his hands,
Plaintiff said he thought he had nerve damage in the "outer
fingers" and he dropped things.  (R. 67.)  Plaintiff testified that
he changed positions frequently and his neck got stiff from
sitting.  (R. 69.)  He said he continued to treat with Dr. Abbasi
and no further surgeries were planned.  (R. 50-51.)

The ALJ questioned Plaintiff about alleged mental health
impairments and Plaintiff verified that he continued to go to NHS
for treatment.  (R. 51.)  When asked if the depression was a factor
of his injury and not being able to work, Plaintiff said his
depression was probably related to the accident but it made it hard
for him to do things.  (R. 52.)

ALJ Tranguch asked vocational expert Tonja Hubacker ("VE") to
consider a hypothetical individual of Plaintiff's age, education
and work experience who could

> perform work at the light exertional level.
> However, he would be limited to lifting and
> carrying no more than ten pounds with his
> right upper extremity.  He'd be capable of

> occasional use of his right upper extremity
> for pushing and or pulling, such as operator
> [sic] a lever or a hand control. The
> individual can occasionally climb stairs;
> should avoid climbing ladders, ropes or
> scaffolding. This individual can
> occasionally use his right upper extremity
> for forward and lateral bending. He would
> need to avoid overhead reaching or overhead
> work with the right upper extremity. He can
> occasionally perform gross handling with his
> right upper extremity. This individual
> should avoid occupations that would require
> rotation of his head or neck to the left.
> The individual should avoid concentrated
> exposure to vibrations and potential
> pulmonary respiratory irritants, such as
> fumes, strong odors, dust, gases, and work
> environments with poor ventilation. He
> should avoid workplace hazards, such as
> unprotected heights and dangerous moving
> machinery. This individual can perform jobs
> that are unskilled in nature, involving only
> simple routine tasks.

(R. 71-72.) The VE testified that such an individual could not do Plaintiff's past relevant work but she gave examples of jobs the individual could do. (R. 72.)

For the second hypothetical, ALJ Tranguch further limited the individual to lifting and carrying no more than five pounds with his right upper extremity, and avoiding pushing and pulling with his right upper extremity. (R. 72.) The VE said the previously identified jobs remained available. (R. 73.)

In the third hypothetical, ALJ Tranguch limited the individual to sedentary work. (*Id.*) The VE identified exemplary positions that would be available: callout operator, document preparer, and addresser. (*Id.*)

When ALJ Tranguch asked Plaintiff's attorney if she had any additional questions or hypotheticals for the VE, she responded that she did not but she requested that the ALJ look at the first page of Dr. Dobash's opinion which went into what the Functional Capacity Evaluation ("FCE") had stated.  (R. 73-74.)

## D. *ALJ Decision*

In his April 27, 2017, Decision, ALJ Tranguch found that Plaintiff had the following severe impairments: history of cervical spine fracture at the C2 level, status-post internal fixation; degenerative disc disease of the cervical spine; history of right humerus fracture, status-post open reduction and internal fixation; post-traumatic arthritis of the right shoulder; asthma; depressive disorder; obsessive-compulsive disorder (OCD); and impulse control disorder.  (R. 14.)  He determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  (*Id.*)

ALJ Tranguch then assessed Plaintiff to have the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20
> CFR 404.1567(a) except he is limited to
> lifting and carrying five pounds with his
> right upper extremity. The claimant must
> avoid using his right upper extremity for
> pushing and/or pulling such as operating a
> lever or hand control. He can occasionally
> climb stairs. The claimant should avoid
> climbing ladders, ropes, and scaffolding. He
> can occasionally use his right upper
> extremity for forward and lateral reaching.
> The claimant should avoid overhead work or

12

> reaching with his right upper extremity. He
> can occasionally perform gross handling with
> his right upper extremity. The claimant
> should avoid occupations that would require
> rotation of his head or neck to the right and
> he can occasionally rotate his head and neck
> to the left. He should avoid concentrated
> exposure to vibrations and potential
> pulmonary irritants such as fumes, strong
> odors, dusts, and gases and work environments
> with poor ventilation. The claimant should
> avoid work hazards such as unprotected
> heights and dangerous moving machinery. He
> can perform jobs that are unskilled in
> nature, involving simple, routine tasks.

(R. 16.)

Based on this RFC, ALJ Tranguch found that Plaintiff could not do his past relevant work but jobs existed in significant numbers in the national economy which he was able to perform. (R. 22.) Therefore, he determined that Plaintiff had not been under a disability from October 4, 2013, through the date of the decision. (R. 23.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[1] It is necessary for the

---

[1] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

> only if his physical or mental impairment or
> impairments are of such severity that he is not
> only unable to do his previous work but cannot,

13

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate

---

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. (R. 23.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality

15

> test if the Secretary ignores, or fails to
> resolve, a conflict created by countervailing
> evidence. Nor is evidence substantial if it
> is overwhelmed by other evidence--
> particularly certain types of evidence (e.g.,
> that offered by treating physicians)--or if
> it really constitutes not evidence but mere
> conclusion. *See* [*Cotter*, 642 F.2d] at 706
> ("'Substantial evidence' can only be
> considered as supporting evidence in
> relationship to all the other evidence in the
> record.") (footnote omitted). The search for
> substantial evidence is thus a qualitative
> exercise without which our review of social
> security disability cases ceases to be merely
> deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (citations omitted). If he has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court

16

can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where a claimed error would not affect the outcome of a case, remand is not required. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

As set out above, Plaintiff asserts the Acting Commissioner's determination should be remanded for the following reasons: 1) the

ALJ's residual functional capacity ("RFC") assessment is unreviewable because the ALJ did not identify any specific longitudinal objective signs or findings that are inconsistent with Dr. Dobash's opinion; and 2) the RFC assessment is not supported by substantial evidence because the ALJ did not reject or explain his failure to reject relevant portions of an opinion to which he assigned significant weight and which he found supported by the record.  (Doc. 9 at 9.)

## A.  Dr. Dobash's Opinion

Plaintiff first contends that the ALJ did not properly explain his decision for assigning "limited weight" to Dr. Dobash's opinion.  (Doc. 9 at 10.)  Defendant responds that the ALJ properly evaluated the opinion.  (Doc. 10 at 7.)  The Court concludes Plaintiff has shown the asserted error is cause for remand.

Under applicable regulations and the law of the Third Circuit, a treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight.[2]  See, e.g.,

---

[2]  Though not applicable here, the regulations have eliminated the treating source rule for claims filed on or after March 27, 2017,  and in doing so have recognized that courts reviewing claims have "focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our decision."  82 FR 5844-01, 2017 WL 168819, *at 5853 (Jan. 18, 2017).  The agency further stated that in its experience in adjudicating claims using the treating source rule since 1991, the two most important factors for determining persuasiveness are consistency and supportability, which is the foundation of the new regulations.  Id.  Therefore, the new regulations contain no automatic hierarchy for treating sources, examining sources, or reviewing sources, but instead,

*Fargnoli v.* ___ , 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. §

404.1527(c)(2); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.

1981)). Sometimes called the "treating physician rule," the

principle is codified at 20 C.F.R. § 404.1527(c)(2), and is widely

accepted in the Third Circuit. *Mason v. Shalala*, 994 F.2d 1058 (3d

Cir. 1993); *see also Dorf v. Brown*, 794 F.2d 896 (3d Cir. 1986).

The regulation addresses the weight to be given a treating source's

opinion: "If we find that a treating source's opinion on the

issue(s) of the nature and severity of your impairment(s) is well-

supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other

substantial evidence in your case, we will give it controlling

weight." 20 C.F.R. § 404.1527(c)(2).[3] "A cardinal principle

---

focus on the analysis of these factors. *Id.* 20 C.F.R. § 404.1520c
addresses the evaluation of opinion evidence for cases filed on or
after March 27, 2017.

[3] 20 C.F.R. § 404.1527(c)(2) states in relevant part:

> Generally, we give more weight to opinions from
> your treating sources, since these sources are
> likely to be the medical professionals most
> able to provide a detailed, longitudinal
> picture of your medical impairment(s) and may
> bring a unique perspective to the medical
> evidence that cannot be obtained from the
> objective medical findings alone or from
> reports of individual examinations, such as
> consultative examinations or brief
> hospitalizations. If we find that a treating
> source's opinion on the issue(s) of the nature
> and severity of your impairment(s) is well-
> supported by medically acceptable clinical and
> laboratory diagnostic techniques and is not

guiding disability eligibility determinations is that the ALJ
accord treating physicians' reports great weight, especially when
their opinions reflect expert judgment based on continuing
observation of the patient's condition over a prolonged period of
time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)
(citations omitted); *see also Brownawell v. Commissioner of Social
Security*, 554 F.3d 352, 355 (3d Cir. 2008). In choosing to reject
the treating physician's assessment, an ALJ may not make
"speculative inferences from medical reports and may reject a
treating physician's opinion outright only on the basis of
contradictory medical evidence and not due to his or her own
credibility judgments, speculation or lay opinion." *Morales*, 225
F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.
1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)).

Medical opinions entitled to controlling weight are those from
"acceptable medical sources" which, by definition, include licensed
physicians and psychologists, and licensed advanced practice

> inconsistent with the other substantial
> evidence in your case record, we will give it
> controlling weight. When we do not give the
> treating source's opinion controlling weight,
> we apply the factors listed in paragraphs
> (c)(2)(i) and (c)(2)(ii) of this section, as
> well as the factors in paragraphs (c)(3)
> through (c)(6) of this section in determining
> the weight to give the opinion. We will always
> give good reasons in our notice of
> determination or decision for the weight we
> give your treating source's opinion.

registered nurses and licensed physician assistants for impairments within his or her licensed scope. 20 C.F.R. §1502(a); 20 C.F.R. § 404.1527(a). Opinions from "medical sources" who are not "acceptable medical sources" are also considered. 20 C.F.R. § 404.1527(f). The definition of "medical source" includes an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted. 20 C.F.R. § 404.1502(d). An opinion from such an individual is considered using the factors applicable to acceptable medical sources (20 C.F.R. § 404.1527(c)(1) through (c)(6)) and, in some cases, the opinion may outweigh the medical opinion of an acceptable medical source. 20 C.R.R. § 404.1527(f). By way of example, the regulation provides that

> it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

*Id.*

Here the ALJ first stated "the undersigned gives limited weight to Dr. Dobash's opinion (Exhibit B-12F). The limitations noted by Dr. Dobash, particularly the exertional limitations, the need to walk around, the need to shift positions, the absences, etc. are not consistent with the examination findings or other evidence of record." (R. 21.) He then stated "[t]he undersigned

gives significant weight to the Functional Capacity Evaluation (Exhibit B-16F). While the evaluator is a physical therapist and not an acceptable medical source, she is a trained professional with a doctorate in physical therapy." (*Id.*)

The legal framework set out above indicates ALJ Tranguch was entitled to assign the physical therapists's FCE significant weight (R. 15) and he was entitled to assign it greater weight than the treating primary care provider's opinion. However, he was obligated to adequately explain his reasons for doing so, i.e., he had to provide an adequate justification for his decision that the FCE was entitled to significant weight and Dr. Dobash's opinion, which referenced the FCE and was not inconsistent with it in many ways, was entitled to "limited weight" (R. 21). *See Burnett*, 220 F.3d at 119-20; *Dobrowolsky*, 606 F.2d 403, 406 (3d Cir. 1979).

Recognizing that the decision is to be read as a whole and neither magic language nor a particular analytical format is required, relevant authority requires sufficient development of the record and explanation of findings to permit meaningful judicial review, 42 U.S.C. § 405(g); *see, e.g., Burnett*, 220 F.3d at 120; *see also Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 120), the Court concludes meaningful judicial review is not possible on the issue of the weight assigned Dr. Dobash's opinion. This conclusion is based on the fact that the Court cannot glean sufficient analysis in the

ALJ's explanation of his RFC assessment to conclude that his determination to assign limited weight to Dr. Dobash's opinion is supported by substantial evidence. (*See* R. 16-22.)

The Court does not find any explanation why Dr. Dobash's identified exertional limitations regarding the need to walk around and the need to shift positions are not consistent with examination findings or other evidence of record (R. 21). The need for explanation is apparent because examination findings, being necessarily a snapshot in time, would not likely address a patient's need to walk around every thirty minutes or shift positions every twenty-five minutes (*see* R. 473) unless the stationary exams lasted longer than the durational period identified by Dr. Dobash. Thus, ALJ Tranguch made a speculative inference on what physical examination findings showed which is specifically prohibited pursuant to *Morales* and well established Third Circuit precedent. *See*, *e.g.*, 225 F.3d at 317.

Further, "other evidence of record" includes Plaintiff's testimony that he needs to change positions often. (R. 69.) ALJ Tranguch acknowledged Plaintiff's testimony that he had trouble sitting for a long time. (R. 20.) ALJ Tranguch did not cite evidence contradicting Plaintiff's testimony on these issues. (*See* R. 16-21.) To the extent Dr. Dobash may have based some assessed limitations on Plaintiff's subjective complaints which he did not find inconsistent with physical findings and the FCE (*see* R. 471,

474), such assessment is within the province of a provider who has treated the patient for several years. *See* 20 C.F.R. § 404.1527(c)(2). Importantly, the ALJ does not acknowledge or attempt to discount the support for the assessments which Dr. Dobash identified in his Physical RFC Questionnaire. (*See* R. 471, 474.) Nor does the ALJ acknowledge consistency between Dr. Dobash's opinion and the FCE which is particularly significant where limitations affecting sedentary occupations are concerned. (*See* R. 474, 507-08.)

Finally, as Plaintiff argues in his reply brief (Doc. 11 at 4-5), neither Defendant nor the Court can now do what the ALJ should have done, *see*, *e.g.*, *Fargnoli*, 247 F.3d 34, 42, 44 n.7 (3d Cir. 2001)--neither can provide a basis for upholding the opinion which the ALJ himself does not, *Motor Vehicle Mfgrs. Ass'n of U.S., Inc. v. State Fweigharm Mut Auto Ins. Co.*, 463 U.S. 29, 43 (1983); *Fargnoli*, 247 F.3d at 42; *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (ed Cir. 1986). It is the ALJ's province to identify conflicting records with specificity and provide reasons for crediting certain objective clinical findings over others. *See*, *e.g.*, *Gross*, 653 F. App'x at 120-21 (citations omitted). Thus, evidence cited by Defendant as supportive of ALJ Tranguch's evaluation of Dr. Dobash's opinion (Doc. 10 at 7-9) cannot be found sufficient to accept the conclusion that the opinion was properly assigned limited weight (R. 21).

*B.*   ***Credibly Established Limitations***

Plaintiff argues that the RFC assessment is not supported by substantial evidence because the ALJ did not reject or explain his failure to reject relevant portions of an opinion to which he assigned significant weight and which he found supported by the record.  (Doc. 9 at 13-17; Doc. 11 at 5-8.)  Defendant responds that Plaintiff misread the decision regarding light/sedentary work and the ALJ's RFC assessment otherwise adequately incorporated the FCE.[4]  (Doc. 10 at 11.)  The Court concludes that limitations established in the FCE and not addressed in the RFC should be further addressed upon remand.

Pursuant to *Rutherford*, an ALJ is not required to submit to the vocational expert or include in the RFC every impairment alleged by a claimant but an ALJ is only entitled to rely on VE testimony if credibly established limitations are included in the hypothetical.  399 F.3d at 553-54 (citations omitted).  The hypothetical posed to the VE must "accurately convey to the vocational expert all of a claimant's *credibly established limitations.*"  *Id.* at 554 (citing *Plummer*, 186 F.3d at 431).  Whether a limitation is credibly established is often the crux of

---

[4]   In his supporting brief, Plaintiff raised an argument about a discrepancy in the decision regarding light and sedentary work which required remand.  (Doc. 9 at 14.)  After Defendant correctly discounted Plaintiff's argument on the basis that ALJ Tranguch limited him to sedentary work (Doc. 10 at 11), Plaintiff acknowledged that this aspect of his claimed error lacked merit (Doc. 11 at 5).

the issue when a plaintiff asserts that the ALJ did not include a limitation in a hypothetical to the VE or the RFC does not account for limitations. The inquiry then becomes whether the ALJ properly discredited the claimed limitation and thus either did not include it in a hypothetical question or did not include it in the RFC. Case law and regulations[5] address when a limitation is credibly established. *Rutherford*, 399 F.3d at 554.

> Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response (*Burns*, 312 F.3d at 123). Relatedly, the ALJ may not substitute his or her own expertise to refute such record evidence (*Plummer*, 186 F.3d at 429). Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible-the ALJ can choose to credit portions of the existing evidence but "cannot reject evidence for no reason or for the wrong reason" (a principle repeated in *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993); [20 C.F.R. § 416.]929(c)(4)). Finally, limitations that are asserted by the claimant but lack objective medical support may possibly be considered nonetheless credible. In that respect the ALJ can reject such limitation if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it. ([20 C.F.R. § 416.](c)(3)).

---

[5] *Rutherford* specifically identifies 20 C.F.R. §§ 416.945, 929(c) and 927) as relevant to the inquiry. 399 F.3d at 554.

399 F.3d at 554.

Plaintiff claims several limitations were established in the FCE but not included in the RFC: he could not stand for more than twenty-five minutes continuously, walk for more that .3 miles continuously, or push/pull more than ten pounds; he could not perform balancing activities that require crouching, stooping, kneeling, crawling; and he could not tip-pinch or palmer-pinch with his right hand. (Doc. 9 at 13.) Defendant states that the "RFC assessment included significant manipulative restrictions, such as no use of hand controls, limited forward and lateral reaching, no overhead work, and limited gross handling with the right upper extremity. Accordingly, the ALJ's RFC assessment adequately incorporated the Functional Capacity Evaluation." (Doc. 10 at 11 (citing R. 16).)

While Defendant's response identifies limitations found in the RFC (R. 16), it does not point to consideration in the RFC of the limitations identified by Plaintiff or point to evidence that the ALJ found the limitations not to be credibly established. Nor does Defendant argue that failure to include the limitations would be harmless error. For example, Defendant did not show that the sedentary jobs identified by the VE did not require skills impacted by the limitations not considered by the ALJ. In this context, the Court concludes this claimed error must be addressed upon remand.

## V. Conclusion

For the reasons discussed above, the Court concludes this matter must be remanded to the Acting Commissioner for further consideration consistent with this opinion.  An appropriate Order is filed simultaneously with this Memorandum.

<u>S/Richard P. Conaboy</u>
RICHARD P. CONABOY
United States District Judge

DATE: September 4, 2018